UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JEM ACCESSORIES, INC. d/b/a Xtreme Cables,

Plaintiff,

-against-

JVCKENWOOD USA CORPORATION and
HARMAN INTERNATIONAL INDUSTRIES,
INC.,

Defendants.

----------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/2021
```

11:20-cv-4984-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

This is a trademark infringement and unfair competition suit brought by Jem Accessories,

Inc. ("Jem"), an electronics company in the business of manufacturing, selling, and distributing

electronics products and accessories, such as headphones, earbuds, speakers, and Bluetooth

products. Jem alleges that its competitors, defendants JVCKENWOOD USA Corporation ("JVC")

and Harman International Industries, Inc. ("Harman"),[1] have infringed on its trademark rights by

selling audio accessories using Jem's marks. The amended complaint describes separate acts by

separate entities, who are joined in a single action based on the similar nature of their allegedly

infringing conduct. Jem has not alleged that JVC and Harman, or their allegedly infringing acts, are

in any way related, nor that they are jointly and severally liable.

Harman argues that it has been misjoined and moves the Court to drop it from this action.

Alternatively, Harman seeks to sever the claims against it and transfer the case to the Central District

---

[1] Jem alleges that Harman does business as "JBL" and refers to it as such in the Amended Complaint. *See* Am. Compl.,
Dkt. No. 14, ¶¶ 8, 24.

of California, where the United States headquarters of Harman's Lifestyle Audio Division is located and a separate trademark infringement action is pending between Jem and Harman.

Because Jem has improperly joined its claims against JVC and Harman into a single action, Harman's motion is GRANTED and the Court exercises its discretion to drop Harman from the case.

## II.   BACKGROUND

Jem is a New Jersey corporation with its principal place of business in Edison, New Jersey. Am Compl. ¶ 6.  Jem manufactures, sells, and distributes electronics products and accessories, including headphones, earbuds, speakers, and Bluetooth products.  *Id.* ¶ 9.  Jem alleges that it has continually used its XTREME mark as a common law trademark in commerce throughout the United States for more than fifteen years.  *Id.* ¶ 11; *see also id.* ¶ 12.  In 2014, Jem obtained a U.S. trademark registration for its XTREME DIGITAL LIFESTYLE ACCESSORIES® mark, for "brackets specially adapted for setting up flat screen TV sets, carrying cases for mobile computers, cell phone battery chargers, cell phone cases, cell phone covers, computer mouse [sic], computer stylus [sic], protective cases for smartphones, and USB cables for cellphones."  *Id.* ¶ 13.  Jem is also the assignee of U.S. Trademark Registration No. 4,264,683 for the XTRAEM mark, issued in 2012, for earphones, headphones, and ear buds.  *Id.* ¶ 16.

Harman and JVC are Jem's competitors.  *Id.* ¶ 20.  They also sell electronic goods such as headphones, earbuds, and Bluetooth speakers.  *Id.*  Jem alleges that after it adopted its XTREME mark, Jem and Harman adopted an identical mark for the same type of goods.  *Id.* ¶ 21.

Harman is a corporation with its principal place of business in Stamford, Connecticut.  *Id.* ¶ 8. Jem alleges that Harman has infringed on its XTREME trademark by selling its Bluetooth speakers under the mark.  *Id.* ¶ 24.

JVC is a corporation with its principal place of business in Long Beach, California. *Id.* ¶ 7. Jem alleges that JVC sells earbuds and headphones under the XX XTREME XPLOSIVES and XTREME XPLOSIVES marks. *Id.* ¶ 23.

This action was filed on June 29, 2020. Compl., Dkt. No. 1. The operative complaint was filed on August 10, 2020. Am. Compl. Jem brings three causes of action against the two defendants: trademark infringement under the Lanham Act, and unfair competition claims under the Lanham Act and New York law. *Id.* at 6–8. On October 9, 2020, Harman moved to drop Harman from this action or, alternatively, to sever the action against Harman and transfer the severed action under 28 U.S.C. § 1404(a). Memo. in Support of Mot. to Drop Harman From This Action or, Alternatively, to Sever the Action Against Harman and Transfer the Severed Action Under 28 U.S.C. § 1303(a) ("Mem."), Dkt. No. 31; *see also* Dkt. No. 30. Jem opposed the motion on October 23, 2020. Mem. in Opp'n to Def. Harman's Mot. to Drop or Sever and Transfer ("Opp'n"), Dkt. No. 42. Harman replied on October 30, 2020. Def. Harman's Reply in Support of Its Mot. to Drop or Sever and Transfer ("Reply") Dkt. No. 46.

## III.    LEGAL STANDARD

Rule 21 governs the misjoinder and nonjoinder of parties. Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "A court has broad discretion in determining whether to add or drop parties, . . . which is guided by principles of fundamental fairness and judicial efficiency." *BBK Tobacco & Foods, LLP v. 7th St. Vill. Farm Inc.*, No. 1:17-CV-4079-GHW, 2017 WL 8723938, at *1 (S.D.N.Y. June 15, 2017) (citations and internal quotation marks omitted). While the text of the rule does not define "misjoinder," "[t]he cases make it clear that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder

3

of parties set forth in Rule 20(a)."  7 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (herein after "Wright & Miller") § 1683 (3d ed. 2020).

Rule 20 governs when a plaintiff may bring claims against multiple defendants in a single suit.  *See* Fed. R. Civ. P. 20(a)(2).  Rule 20(a)(2) provides that joinder of multiple defendants in one action is permitted if

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

*Id.*

In determining whether the "transaction or occurrence" requirement of Rule 20(a)(2) has been met, "courts are to look to the logical relationship between the claims and determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit."  *Trainum v. Rockwell Collins, Inc.*, No. 16-cv-7005 (JSR), 2017 WL 1093986, at *2 (S.D.N.Y. Mar. 9, 2017) (citation and internal quotation marks omitted).  A logical relationship does not exist where a plaintiff's claims against one defendant are "independent and distinct from the allegations against the [other] Defendants."  *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 166, 168 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).  Thus, "[a]lthough courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, 'the mere allegation that Plaintiff was injured by all Defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).'"  *Clay v. Doe*, No. 20-CV-7692, 2020 WL 6151436, at *1 (S.D.N.Y. Oct. 20, 2020) (citing *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126–27 (2d Cir. 1970), and quoting *Deskovic*, 673 F. Supp. 2d at 167).

The Court draws the facts principally from the Amended Complaint.  *See* Am. Compl.  In assessing whether the requirements of Rule 20 are met, courts must accept the factual allegations in

a plaintiff's complaint as true. *Deskovic*, 673 F. Supp. 2d at 159 (citing *Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) ("[W]he[n] there has not been a trial and no facts developed during the pretrial discovery phase of the litigation have been presented to the Court for analysis . . ., the Court is required to accept the [factual] allegations made by the plaintiffs in their complaint and assume that all the matters alleged by them in the complaint are true and provable.")). The plaintiff bears the burden of demonstrating that joinder is warranted under Rule 20. *Id.* The requirements of Rule 20 are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding. *Viada*, 235 F.R.D. at 61 (S.D.N.Y. 2006) (quotation and citation omitted). However, "[b]ecause Rule 20 joinder is permissive, not required, a court is perfectly free to deny a plaintiff permission to join claims against different defendants." *J.T. v. de Blasio*, No. 20 CIV. 5878 (CM), 2020 WL 6748484, at *26 (S.D.N.Y. Nov. 13, 2020).

When evaluating motions brought under Rule 21, in addition to the prerequisites of Rule 20(a)(2), courts have considered "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *See Golden Goose Deluxe Brand v. Aierbushe*, No. 19-CV-2518 (VEC), 2019 WL 2162715, at *2 (S.D.N.Y. May 16, 2019) (citing *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008)); *see also In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003).

## IV.   DISCUSSION

### A.  The Parties Are Not Properly Joined Under Rule 20(a).

Jem has failed to show that joinder of its claims against JVC and Harman is warranted under Rule 20(a)(2). To join multiple defendants in one action, Jem must show that:

(A) any right to relief is asserted against [the defendants] jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

At the outset, due to the nature of this suit, Jem has satisfied the second requirement of Rule 20(a)(2) because there may be questions of law or fact common to both defendants. *Iconix Brand Grp., Inc. v. Roc Nation Apparel Grp., LLC*, No. 17-CV-3096 (AJN), 2019 WL 5203256, at *1 (S.D.N.Y. Sept. 26, 2019). For example, because Jem alleges that JVC and Harman "allegedly infringed on the same mark or family of marks, there will be common inquiries regarding, for example, the strength of [Jem's] marks, that will cut across different claims." *Id.* (*citing Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)); *see also Golden Goose*, 2019 WL 2162715, at *2 ("Plaintiff brings identical causes of action against each Defendant and, if litigated, Plaintiff's claims will involve the same evidence of Plaintiff's trademarks, goodwill, and alleged consumer confusion."). But this alone is not enough; a plaintiff must satisfy both of Rule 20(a)(2)'s prerequisites to join its claims against multiple defendants.

The pertinent question is whether Jem has satisfied the first requirement of Rule 20(a)(2)— that is, whether Jem has alleged that JVC and Harman's actions are connected by a single transaction or occurrence, or series of transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(2). Jem has not alleged that JVC and Harman are jointly, severally, or alternatively liable. Jem argues that the allegedly infringing acts by JVC and Harman are logically related in that the "trademarks asserted against both entities is the same, and the products are similar." Opp'n at 7. This is insufficient. The Second Circuit has held that even where multiple defendants "use the same method to violate the law[, that fact] does not authorize them to be joined as defendants in a single lawsuit." *Nassau Cnty. Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974))); *see also de Blasio*, 2020 WL 6748484, at *26 (holding that allegations that "the defendants merely committed the

same type of violation in the same way" are insufficient to justify joinder); *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 169 (S.D.N.Y. 2012) (same). "Claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts. To be part of the 'same transaction' requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012).

Indeed, in a trademark infringement suit, "the mere fact that multiple parties have allegedly infringed the same trademark does not mean that those parties are transactionally related for purposes of Rule 20." *Golden Goose*, 2019 WL 2162715, at *2 (collecting cases). Here, Jem alleges that Harman and JVC are using different infringing marks in connection with their independent sales of different products. Am. Compl. ¶¶ 23–24. Though not necessarily required, "coordinated actions or share[d] ownership" among defendants have justified joinder in trademark infringement actions such as this one. *Iconix, LLC*, 2019 WL 5203256, at *1 (citing *WowWee Grp. Ltd. v. Meirly*, No. 18-CV-706 (AJN), 2019 WL 1375470, at *6 (S.D.N.Y. Mar. 27, 2019), *reconsideration denied*, No. 18-CV-706 (AJN), 2020 WL 70489 (S.D.N.Y. Jan. 7, 2020)). Jem does not allege that such facts are present here. Based on the facts alleged in the Amended Complaint, Harman and JVC are separate, independently owned companies—indeed competitors—who are not involved in the manufacture, sale, distribution, or marketing of the other's allegedly infringing products.

The Court appreciates that the pursuit of multiple instances of trademark infringement in one action may be efficient for Jem, but that interest alone does not justify the joinder of multiple actions against separate infringers into one. Because Jem has not satisfied Rule 20(a)(2)'s requirements for bringing claims against multiple defendants, joinder is not appropriate.

**B. The Claims May Be Severed Under Rule 21.**

"Even when the requirements of Rule 20 are not met, Rule 21 affords a district court 'broad discretion' in fashioning an appropriate remedy." *Golden Goose*, 2019 WL 2162715, at *3 (quoting *Deskovic*, 673 F. Supp. 2d at 159–60). "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. In considering whether to drop a party, courts in this District consider three factors in addition to the requirements of Rule 20(a)(2) discussed above: "'(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence.'"[2] *See Golden Goose*, 2019 WL 2162715, at *3 (quoting *Kehr*, 596 F. Supp. 2d at 826). The Federal Rules are to be interpreted "toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Turning to the first factor, severance of the claims against Harman and JVC would serve judicial economy. The infringement claims against each of the defendants are for the same marks

---

[2] A brief detour is warranted to note a problematic mutation in the law on severance that has manifested itself in a series of district court decisions over the last two decades or so. Several district courts have held that, to justify severing claims under Rule 21, the presence of "only one" of the following five factors is required: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See, e.g.*, *Fox v. Starbucks Corp.*, No. 19-CV-4650 (AJN), 2020 WL 1033059, at *3 (S.D.N.Y. Mar. 2, 2020) ("Severance requires the presence of only one of these conditions") (quoting *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502-503 (S.D.N.Y. 2013)); *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015); *Corporan v. City of Binghamton*, No. 05-CV-1340, 2006 WL 2970495, at *3 (N.D.N.Y. Oct. 16, 2006). This statement of the law doesn't make sense because it asserts that severance is warranted if a court merely finds that either (1) the claims arise out of the same transaction or occurrence or (2) the claims present some common questions of law or fact. But these are the factors that weigh in favor of joinder of parties; the presence of either of those factors arguably counsels *against* severance. So why are courts saying that finding either one of the two factors that support joinder can, by itself, justify severance? Like an analysis of DNA, we can find where the mutation happened by looking at the cases cited in support of this statement of the law. An errant cut and splice of the law in one ancestral case has resulted in an aberrant, somewhat nonsensical, statement of the law that has carried on through generations of progeny, including the cases cited above.

First, some background. The first two of the five factors in this description of the law are Rule 20(a)(2)'s requirements for *joinder*—that is, when parties' claims should be joined together into a single action. The third, fourth, and fifth factors are derived from Rule 42(b). *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and

economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). Those factors describe when claims or parties should be severed and tried separately. Many courts in this Circuit have held that the determination as to whether to sever claims under Rule 21 or to order separate trials under Rule 42(b) "requires the same considerations." *See, e.g., Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999); *see also Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 288 F.R.D. 331, 333 (S.D.N.Y. 2013); *Deskovic*, 673 F. Supp. 2d 154, 172 (S.D.N.Y. 2009); *In re Zyprexa Prods. Liability Litig.*, No. 04–CV–1615, 2004 WL 2812095, at *3 (E.D.N.Y. Dec. 3, 2004); *Wausau Bus. Ins. Co. v. Turner Const. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y. 2001); *Fong v. Rego Park Nursing Home*, 1996 WL 468660, *1 (E.D.N.Y. Aug. 7, 1996); *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995); *Sutton Hill Associates v. Landes*, 1988 WL 56710, *2 (S.D.N.Y. May 25, 1988); *see also* Wright & Miller, § 1652 ("Further, the court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay."). In cases analyzing motions brought under Rule 42(b), courts have held that only one of the three conditions specified in the rule—convenience, to avoid prejudice, or to expedite and economize—was needed to justify ordering separate trials. *See Ricciuti v. New York City Transit*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992) ("It is also established that bifurcation requires the presence of only one of these conditions." (citing *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990)); *see also* Fed. R. Civ. P. 42(b). That approach makes sense in the context of a motion to conduct separate trials, and it is provided for in the text of Rule 42(b).

This background sets the stage for a description of the mutation of the statement of the law described above: namely, the statement that "any one" of the *five* factors described above will justify severance, as opposed to any one of the last three factors. The Court has traced the point at which the concept that satisfaction of any one of those five factors was sufficient to justify severance dropped into our jurisprudence, and, frankly, it just looks like a mistake.

In *Lewis v. Triborough Bridge & Tunnel Auth.*, the court cited *Ricciuti* for the statement "severance requires the presence of only one of these conditions[,]" but added one additional factor: "1) whether the issues sought to be tried separately are significantly different from one another[.]" No. 97 CIV. 0607 (PKL), 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000) (citation omitted). Although the *Ricciuti* court was only referring to the three factors under Rule 42(b), without mention of the additional factor added in *Lewis*, the *Lewis* court's declaration that "only one" of the now four conditions was required still made logical sense, because the question was whether the issues were significantly *different*.

The law took an errant turn in *Cestone v. Gen. Cigar Holdings, Inc.*, No. 00CIV3686RCCDF, 2002 WL 424654 (S.D.N.Y. Mar. 18, 2002). The *Cestone* court quoted the following phrase from *Lewis*: "[s]everance requires the presence of only one of these conditions" after a description of the *five* factors described above, replacing the *Lewis* court's additional "significantly different" factor with the two Rule 20(a)(2) requirements for joinder. *Cestone*, 2002 WL 424654, at *2 ("The Court considers: '(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact, (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.' . . . 'Severance requires the presence of only one of these conditions.' *Lewis*, 2000 WL 423517 at *2 (citing *Ricciuti v. New York City Transit*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992))."). The cut and paste job in *Cestone* resulted in a mutated statement of the law—applying the statement from *Lewis* regarding "any one" of four factors being sufficient to justify severance, to a different set of five factors. And *Cestone*'s five factors included the two Rule 20(a)(2) tests for joinder, describing them as sufficient conditions to justify severance. That this was an error seems obvious: the *Lewis* court said that it was sufficient to sever claims if the "issues sought to be tried separately are significantly *different* from one another." *Cestone* inverted the test, saying that a court could sever claims if they were sufficiently similar. *Cestone* presents no reasoning for its modification of the law. This unreasoned splicing was a devolution, rather than an evolution of the law. It resulted in a statement of the law that does not make sense.

The *Cestone* court's transposition of the phrase "[s]everance requires the presence of only one of these conditions" from its original Rule 42(b) application to a set of conditions including Rule 20(a)(2)'s requirements is illogical. Imagine if you will, a case where two defendants coordinated to sell a single product infringing on a plaintiff's trademark, such that the claims against them would properly be considered as arising out of the same transaction or occurrence, thus satisfying the second factor. And, imagine that none of the last three factors—whether settlement of the claims or judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims—were present. In this scenario, one of the conditions is present, but it clearly counsels against severance of the actions against the defendants. But *Cestone*, *Oram* and the cases that cite to them in turn say that the court should feel free to sever the claims. Some courts seem to have

9

and for the same type of goods, but the similarities end there. Based on the facts alleged in the Amended Complaint, Defendants appear to be entirely separate entities which did not have anything to do with the other's allegedly infringing acts. Jem has not alleged otherwise. Furthermore, JVC and Harman will likely wish to pursue their own legal strategies and may raise defenses only applicable to that defendant. Thus, "there is little to gain in judicial economy from maintaining [Jem's] individual claims together," as they would necessarily proceed as functionally separate actions. *See Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 26 (S.D.N.Y. 2016) (citing *Medicare Beneficiaries' Def. Fund v. Empire Blue Cross Blue Shield*, 938 F. Supp. 1131, 1147 (E.D.N.Y. 1996)). And dropping Jem's claims against Harman from this suit will permit the parties to consider integrating them into their pending action in California.

Turning to the second factor, prejudice will likely result if the claims against JVC and Harman remain joined in a single action. The parties are wholly unrelated, as are the transactions that serve as the basis of the alleged infringement. Severance of the claims against Harman would only "reduce the potential for prejudice that could arise from confusion of the factual issues and legal claims made by the plaintiffs." *Id.* (quoting *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 339 (E.D.N.Y. 2014) (internal quotation marks and citation omitted)).

And finally, turning to the third factor, the adjudication of the claims against each defendant will require independent discovery and scrutiny. Because the defendants are entirely unrelated

---

noted that something is amiss with the standard that "only one is needed," as they explain the language away. *See, e.g., N. Jersey Media Grp. Inc.* 312 F.R.D. at 115 (S.D.N.Y. 2015) ("Courts within this Circuit have stated that '[s]everence requires the presence of only one of these conditions.' However, these same courts have generally granted severance only after finding more than one of the conditions was met. Accordingly, the Court analyzes all five factors." (internal citations omitted)). Rather than wrestling with the illogical statement of the law that began with *Cestone*, courts might do better to recognize that the statement of the law is flawed. Instead, in confronting a motion to remedy misjoinder, a court could analyze the Rule 20(a) factors separately to determine whether severance should be considered as a resolution for misjoinder. Then, if any one of the three latter factors—convenience, prejudice, or expedition and economy—are present, a court may conclude that severance is warranted. This is the approach the Court has taken here. *See also Golden Goose*, 2019 WL 2162715, at *3 (analyzing the Rule 20(a) factors first, then proceeding to analyze whether a party should be dropped by considering "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." (citations omitted)).

entities, and are not alleged to have coordinated or conspired to infringe on Jem's marks, the claims against them will inevitably involve different witnesses and evidence—the witnesses and evidence regarding Harman's manufacture, advertising, importation, and sale of its Bluetooth speakers will be completely different from that of JVC's manufacture, advertising, importation, and sale of its earbuds and headphones.

After reviewing these factors, the Court has determined that it is appropriate for the Court to exercise its broad discretion and drop Harman from the case.[3]  *See Colonial Funding Network, Inc. v. McNider Marine*, LLC, No. 17 CIV. 2644 (LGS), 2017 WL 5633160, at *6 (S.D.N.Y. Nov. 21, 2017) ("To the extent that [Plaintiffs] seek to prove their claims as they have pleaded them—painting with a broad brush and relying on the similarity of transactions rather than individualized proof— severance will avoid prejudice and possible jury confusion.").  The Court is dropping Harman as a defendant to permit the parties an opportunity to further explore where this action should be litigated, so that Jem can decide if, and where, it wants to refile the suit.

In the event that the Court did not drop Harman from this action, Harman alternatively requested that the Court transfer the claims against it to the Central District of California.  The parties have raised plausible arguments as to whether the Central District of California would be an appropriate forum to litigate Jem's claims against Harman.  Harman argues that "the operative facts of this case do not bear a meaningful connection to this judicial district," Reply at 1, and insists that this case should be adjudicated in California, where Harman claims its Lifestyle Audio Division—the

---

[3] Although the term used in Rule 21 is "dropping" a party, the distinction between this remedy and dismissal under Federal Rule of Civil Procedure 41 is "purely technical."  Wright & Miller, § 1684 & n.5 (citing *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir. 1953) ("The proper method of eliminating one defendant as a party would be to move that he be dropped, not by moving for a voluntary dismissal.")); *see also Microsoft Corp. v. Atek 3000 Computer Inc.*, No. 06CV6403(SLT)(SMG), 2008 WL 2884761, at *1 (E.D.N.Y. July 23, 2008) ("Accordingly, the Court exercises its discretion to dismiss John Doe from this action without prejudice pursuant to Rule 21 of the Federal Rules of Civil Procedure, which permits this Court to drop parties on its own initiative 'at any time, on just terms.'").

department responsible for Harman's consumer audio products, including the allegedly infringing speakers—is headquartered.  Mem. at 2.  Harman also argues that the Central District of California would be an appropriate forum because there is a pending trademark infringement action between Jem and Harman in that district involving another mark.  *Id.* at 18–19.[4]  In response, Jem argues that this action should not be transferred to California, noting that it has moved to dismiss the pending Central District of California action initiated by Harman because, *inter alia*, the Central District of California does not have personal jurisdiction over Jem.[5]  Opp'n at 12.  Jem further claims that it is at home in this District because it conducts business in the "New York metropolitan area" and that the only proper alternative forum, the District of New Jersey, is suffering from judicial emergencies due to open vacancies.  *Id.* at 12, 14.

The Court need not take a position on these arguments.  By dropping Harman from this action, the parties can discuss the appropriateness of alternative fora and Jem can then determine whether another court would be better suited to adjudicate its claims.

## V.     CONCLUSION

For the reasons set forth above, Harman's motion is GRANTED.  Harman is dropped from this case and the claims against it are dismissed without prejudice.  Jem's claims against JVC shall proceed under this case number.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 30.

SO ORDERED.

Dated:  February 22, 2021

_____
GREGORY H. WOODS
United States District Judge

---

[4] The Court does not take a position on whether this action and the one in California are related, or on Jem's related arguments regarding the first-to-file rule and the *forum non conveniens* doctrine.

[5] However, even if that argument were meritorious—a question not before this Court—the Central District of California's lack of personal jurisdiction over Jem as a defendant would not prevent Jem from litigating its claims against Harman in that district as a plaintiff.